IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 30, 2010

**MELVIN S. NETTLES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1407   Cheryl Blackburn, Judge**

_____

**No. M2009-01176-CCA-R3-PC - Filed May 26, 2010**

_____

The petitioner, Melvin S. Nettles, appeals the denial of post-conviction relief by the Davidson County Criminal Court.  In 2007, he pled guilty to sale of less than 0.5 grams of cocaine, a Class C felony.  Pursuant to a plea agreement, he received a twelve year sentence to be served on community corrections.  He was also assessed a fine of $2,000.  The trial court subsequently found that the petitioner violated his community corrections' sentence and ordered confinement.  On appeal, the petitioner challenges the denial of his petition for post-conviction relief, claiming: (1) his guilty plea was not knowing and voluntary; and (2) he received ineffective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

J. Chase Gober, Nashville, Tennessee, for the Petitioner-Appellant, Melvin S. Nettles.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Guilty Plea Hearing**.  The petitioner was indicted on May 25, 2007, for sale of less than 0.5 grams of cocaine and facilitating the sale of less than 0.5 grams of cocaine.  A plea hearing was held on July 2, 2007.

At the beginning of the guilty plea colloquy, the trial court advised the petitioner that he was under oath and obligated to tell the truth. The trial court further stated that if the petitioner had any questions, he could ask either trial counsel ("counsel") or the court for an explanation. A bond reduction hearing had already taken place and the parties had discussed the possibility of a suppression hearing. The trial court asked the petitioner, "I understand you want to waive any issues about that and go ahead and plead guilty; is that right?" The petitioner responded that he did.

The trial court told the petitioner that under the plea agreement, he would be sentenced as a persistent offender and placed on community corrections. The petitioner was informed that he would have to comply with the requirements of the community corrections program, and that there were consequences of violating its terms. The trial court asked the petitioner, "Have you thoroughly discussed with [counsel] at some point in time all the facts about your case?" The petitioner said he had. The petitioner also affirmed that he had reviewed his plea agreement with counsel and that he did not have any questions. The trial court then asked, "Is there anything you need to ask me?" The petitioner responded, "I mean, there's some things I would like to but[.]" The trial court inquired whether the petitioner's concerns affected his plea agreement. The petitioner responded that they did not. The petitioner advised that he was concerned about the motion to suppress and "stuff like that." The trial court explained that those concerns could be addressed at a suppression hearing, but they would not be addressed if he entered the plea agreement. The trial court again asked the petitioner if he understood that he was waiving these issues as part of his guilty plea. The petitioner said he did.

The petitioner testified that he was satisfied with counsel. The trial court explained the rights waived by entering the plea agreement. The petitioner was then asked if he still wanted to plead guilty, and he responded, "It's not what I want to do, but I have to." The trial court questioned the petitioner about whether it was his choice to enter the plea agreement. The petitioner said it was. The trial court then questioned counsel, who testified that the petitioner understood what he was doing, and that he was entering the guilty plea freely and voluntarily.

After the State read the facts supporting the guilty plea, the trial court asked the petitioner if they were true. The petitioner replied, "[s]omewhat" and denied possessing money at the time of the offense. The trial court questioned the petitioner as to whether he wanted to plead guilty, and the petitioner responded, "It don't matter." The petitioner then confirmed that he wanted to plead guilty. The trial court accepted the plea agreement, finding that it was entered freely and voluntarily and supported by adequate facts.

The record also includes a "Petition to Enter Plea of Guilty" that was signed by the petitioner. This petition sets forth an exhaustive list of statements related to whether the plea agreement was entered into knowingly and voluntarily. Some of the most pertinent statements in the petition include the following:

I received a copy of the indictment or information, which states the charge(s) against me, before I was required to plead to the charge(s). I have read and discussed the indictment or information with my attorney.

I have told my lawyer everything I know about the facts and circumstances surrounding the charge(s) against me.

My lawyer has told me and I understand the definitional elements of the crime(s) I am charged with; that is, my lawyer has explained to me what the State has to prove beyond a reasonable doubt to convict a person of the offense(s).

My attorney has also informed me in detail and I understand what the State's evidence against me would be in regard to the charge(s).

My lawyer has explained all possible defenses I might have.

My attorney has counseled and advised me on all of these matters and I understand them.

Thus, I believe I presently understand every charge against me.

I understand that in conjunction with my plea of "GUILTY" I may be asked questions about the offense(s) and if I answer those questions under oath, on the record, and in the presence of my attorney, and do not tell the truth, my answers could later be used against me in a prosecution for perjury, which is a crime punishable by incarceration and/or fine.

I declare that no person has pressured, forced, threatened, or intimidated me into pleading "GUILTY".

I believe my lawyer has done everything any lawyer could have done to represent me and I am satisfied with my legal representation and assistance in this case. I have had no problem communicating with my attorney.

An amended judgment form shows that the petitioner was found to have violated his community corrections' sentence on October 5, 2007. The trial court revoked the alternative sentence and ordered confinement. The petitioner appealed the revocation, and this court affirmed the judgment of the trial court in State v. Melvin Nettles, No. M2007-02405-CCA-R3-CD, 2008 WL 4613809, at *3 (Tenn. Crim. App., at Nashville, Oct. 14, 2008), perm. to appeal denied (Tenn. Feb. 17, 2009).

On March 12, 2008, the petitioner filed a pro se petition for post-conviction relief. An amended petition was filed by appointed counsel on August 27, 2008. The amended petition alleged that trial counsel was ineffective and that the petitioner did not enter the guilty plea knowingly and voluntarily. Specifically, it argued:

1. [Counsel] failed to adequately explain the plea agreement to Petitioner, and thus his plea was not entered into knowingly and voluntarily and with a full understanding of the nature and consequences of the plea.

2. [Counsel] failed to fully investigate the facts surrounding Petitioner's claim and, as a result, Petitioner felt that he had no choice but to take the plea agreement rather than proceed to trial with his attorney, who failed to investigate possible defenses.

3. [Counsel] failed to fully explain the contents of the plea agreement to Petitioner before the plea was taken. Had Petitioner fully understood the plea agreement he would have insisted on proceeding to trial.

4. Petitioner was coerced by [Counsel] into taking his plea agreement and thus it was not entered into voluntarily. Petitioner felt as though he had no real choice except to take the State's plea offer.

**Post-Conviction Hearing**. At the post-conviction hearing, the petitioner testified that he first met with counsel on the day of his arraignment, June 6, 2007. They had a brief discussion in the courtroom. The petitioner returned to the trial court on July 2, 2007 for a bond reduction hearing. In the intervening time, the petitioner said counsel did not visit him in jail or send him anything in the mail. According to the petitioner, he did not know why he was being brought to court on the date of the bond hearing. The trial court denied his motion to reduce bond. The petitioner then asked counsel if the State offered a plea agreement. At this point, the petitioner had not examined discovery material or seen a copy of the indictment. He said counsel met with the State and returned with an offer. The petitioner questioned the length of the sentence and whether he qualified as a persistent offender. The petitioner accepted the plea agreement and entered a guilty plea on the same

day as the bond hearing. He stated that counsel never reviewed the discovery material. The petitioner did not remember explaining to counsel what happened the day of his arrest.

The petitioner testified that he entered the plea agreement because he believed no one was investigating his case or preparing his defense. The petitioner said he informed trial counsel that some of the allegations against him were untrue, and he denied selling narcotics or possessing money at the time of the arrest. The petitioner originally thought he was being sentenced to probation; however, he learned shortly before entering the plea that he would be sentenced to community corrections. The petitioner explained that he entered the plea agreement because he wanted to "keep from losing everything that [he] worked to get." The petitioner said he was "kind of deranged" when he entered the plea agreement.

The petitioner testified that trial counsel provided "very little" explanation about the difference between probation and community corrections. The petitioner said, "It came to me as me leaving and getting back to my life." He stated that counsel did not review the specific obligations of community corrections. The petitioner testified that counsel "somewhat" discussed the plea agreement with him. He said counsel read some of the agreement to him, while the petitioner read other parts of it himself. The petitioner said, "I had many questions, but a lot of them I didn't ask or barely asked." The petitioner questioned counsel about why he was sentenced as a persistent offender, but counsel did not provide a satisfactory explanation.

On cross-examination, the petitioner acknowledged that his criminal record includes seven prior felony convictions. He pled guilty to each of these offenses. The petitioner was not aware that he qualified as a persistent offender because he had five or more prior convictions. The petitioner was unsure what choices were available when he entered the plea agreement, although he knew he did not have to enter the plea. The petitioner recognized that counsel still had time to prepare his defense when he pled guilty. The petitioner wished counsel had spoken with witnesses who could have testified to his good character. He said some of these witnesses were present during the alleged criminal misconduct. He also wished counsel had questioned him more about the facts of his case. The petitioner acknowledged that the trial court discussed the community corrections program with him. He recalled telling the trial court that counsel reviewed all of the case with him. At the post-conviction hearing, the petitioner denied that counsel thoroughly discussed the case with him. The petitioner said he did not understand everything that the trial court asked him during the plea hearing.

Counsel testified that he was appointed to represent the petitioner on his arraignment date, which was June 6, 2007. After briefly meeting with the petitioner, counsel filed a motion to reduce bond and a motion to suppress. Before the bond hearing, counsel received

a letter from the State that was dated June 8, 2007. The letter contained the State's plea offer. The letter also advised that if the case went to trial, the petitioner would be indicted for sale of a controlled substance within one thousand feet of a school. Counsel testified that on the date of the bond hearing, he did not intend for the petitioner to enter the plea agreement. The bond hearing was the first time counsel had seen the petitioner since the arraignment date. Counsel said he intended to discuss with the petitioner the discovery material and the State's plea offer; however, counsel stated that once he conveyed the offer to the petitioner, "he decided he wanted to take it."

Counsel testified that only once before had a client entered a guilty plea within one month of the arraignment date. He explained that when he is appointed to a case, he briefly discusses the case with the client at the outset. Counsel testified that, upon receiving discovery, his normal practice is to discuss the case with the client in greater detail. Counsel testified that the petitioner "seemed to understand everything we went over on the plea petition." Counsel stated that the petitioner did not voice any objections or concerns about going forward with the plea agreement. Counsel believed he "probably" explained to the petitioner the difference between probation and community corrections.

On cross-examination, counsel did not remember when he received the discovery material from the State. He did not think a bond hearing took place because the petitioner indicated his intention to enter a guilty plea before the hearing. Counsel said no witnesses were going to testify at the bond hearing on the petitioner's behalf. Prior to the bond hearing, counsel could not recall whether he sent the petitioner a copy of the bond motion or the indictment. Counsel said he was going to give the petitioner a copy of the discovery material on the date of the bond hearing; however, "As soon as I gave him the offer, he decided he wanted to plea." Counsel testified that he explained to the petitioner why he would be sentenced as a persistent offender. Counsel did not believe the petitioner had any questions about the plea agreement. Counsel stated, "No, he clearly wanted to plea that day. There weren't any concerns that were raised with me."

On May 15, 2009, the post-conviction court denied the petitioner relief. The court first addressed whether counsel was ineffective because he failed to fully investigate the petitioner's claim. The court stated:

> [Counsel] testified that it was his intent to fully go over all the discovery with Petitioner after the conclusion of the bond reduction hearing; however, when Petitioner learned of the State's offer, he wanted to go ahead and accept the offer that day and be released from jail. [Counsel] testified that Petitioner did not request any investigation be done before he entered his plea. [Counsel] also testified that the reason he did not call any witnesses at

Petitioner's bond reduction hearing was because when [he] met with [Petitioner], Petitioner did not provide names of any possible witnesses. The Court credits trial counsel's testimony.

Further, when the State explicitly asked Petitioner what his trial counsel should have done with the approximately 30 days between his arraignment and plea, Petitioner was unable to provide any specific request as to what trial counsel should have done on his behalf.

Since Petitioner elected to enter a plea less than 30 days after arraignment, trial counsel cannot be deemed ineffective for failing to investigate since he did not have sufficient time to engage in a full investigation. Accordingly, Petitioner's request for post-conviction relief is denied as to this claim.

The trial court also denied the petitioner's claim that he did not enter the guilty plea knowingly and voluntarily. It stated:

As summarized above and set forth plainly in the guilty plea transcript, the Court checked with Petitioner multiple times to ensure that he truly wanted to proceed with the plea since Petitioner's responses expressed hesitation. However, Petitioner was clear with the Court that he wanted to enter the plea. The Court notes that Petitioner is familiar with the judicial process, having entered pleas to seven prior felony convictions in six different cases, two of which were before this Court. Based on the evidence and testimony presented to this Court, the Court finds that Petitioner entered in his plea knowingly and voluntarily. Accordingly, Petitioner's request for post-conviction relief is denied as to this claim.

Following the denial of post-conviction relief, the petitioner filed a timely notice of appeal.

## ANALYSIS

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2007). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual

-7-

questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

**Guilty Plea**. The petitioner claims the post-conviction court erred by finding that he pled guilty knowingly and voluntarily. He claims he was coerced into accepting the plea agreement by counsel's "erroneous legal advice." The petitioner does not specify what legal advice counsel offered; however, the petitioner refers to counsel's failure to investigate the case or review the discovery material with the petitioner. The petitioner contends that with adequate representation, he would have rejected the plea and proceeded to trial. In response, the State argues that the petitioner failed to present clear and convincing evidence that he did not knowingly and voluntarily plead guilty.

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244, 89 S. Ct. at 1712. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395

U.S. at 242-43, 89 S. Ct. at 1712). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligent. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Here, the post-conviction court found that the petitioner entered the plea agreement knowingly and voluntarily. The court focused on the petitioner's repeated statements during the guilty plea hearing that he wanted to plead guilty. It also considered the petitioner's familiarity with the judicial process, having pled guilty seven times before. Our review of the record supports the finding of the post-conviction court. At the post-conviction hearing, the petitioner explained that he pled guilty because counsel was not adequately preparing his defense and because he wanted to "keep from losing everything that [he] worked to get." Even if true, these reasons did not prevent the petitioner from knowingly and voluntarily entering the plea agreement. The petitioner acknowledged that he had the option not to plead guilty. The record shows that despite expressing some discontent, the petitioner persisted in his request to enter the plea agreement. At the plea hearing, the petitioner told the trial court that he had reviewed the plea agreement with counsel. He also claimed to have discussed the facts of the case with counsel. The petitioner informed the trial court that he had some questions about the case, but he said they did not concern the plea agreement. The petitioner has simply not met his burden of showing that the post-conviction court erred in finding that he pled guilty knowingly and voluntarily. Therefore, he is not entitled to relief.

**Ineffective Assistance of Counsel**. The petitioner claims the post-conviction court erred in denying relief because he received ineffective assistance of counsel. He argues that counsel's performance was deficient because he failed to investigate the case or provide the petitioner with discovery material prior to pleading guilty. The petitioner contends he was prejudiced by counsel's representation because he would not have pled guilty if he had received adequate representation. The State does not directly address this issue; however, it asserts that the post-conviction court properly found that the petitioner was informed of the terms of the plea agreement and voluntarily chose to plead guilty.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to

deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

Here, the post-conviction court acknowledged that counsel had not reviewed the discovery material with the petitioner or investigated the case; however, it found that counsel's investigation of the case was not deficient because the petitioner voluntarily chose to plead guilty roughly thirty days after his arraignment. The post-conviction court also determined that prejudice had not been shown because the petitioner "was unable to provide any specific request as to what trial counsel should have done on his behalf."

We agree with the post-conviction court that the petitioner cannot establish deficient performance or prejudice. At the post-conviction hearing, the petitioner was asked what counsel should have done differently. The petitioner responded that counsel should have adequately investigated his case. More specifically, the petitioner explained that counsel should have contacted witnesses that were favorable to his defense. He asserted some of these witnesses were present at the time of the offense. These witnesses did not, however, testify at the post-conviction hearing; therefore, the petitioner cannot establish deficient performance or prejudice based on counsel's failure to contact them. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Additionally, the argument that counsel was ineffective because of his insufficient investigation is undercut by the petitioner's voluntary decision to plead guilty so close to his arraignment. The petitioner acknowledged at the post-conviction hearing that he did not have to accept the plea that day and that counsel still had time to prepare his defense. The petitioner has not shown that the post-conviction court erred in its decision. Accordingly, he is not entitled to relief.

**CONCLUSION**

Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE